**RHONE–POULENC, INC., HESS & CLARK DIVISION, Petitioner,**

**v.**

**FOOD AND DRUG ADMINISTRATION, Respondent.**

**VINELAND LABORATORIES, INC., Petitioner,**

**v.**

**FOOD AND DRUG ADMINISTRATION, Sherwin Gardner, Acting Commissioner of Food and Drugs, Respondents.**

**Nos. 79–1694, 79–1706.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 29, 1979.

Decided Nov. 24, 1980.

---

Eugene I. Lambert, Washington, D. C., with whom Richard F. Kingham, Washington, D. C., was on brief, for the petitioner Rhone-Poulenc, Inc., Hess & Clark Division in case No. 79–1694.

Frederick S. Hird, Jr., Washington, D. C., with whom James L. Kaler, Washington, D. C., was on brief, for the petitioner Vineland Laboratories, Inc. in case No. 79–1706.

Donald O. Beers, Associate Chief Counsel for Enforcement, Food and Drug Administration, Rockville, Md., with whom Richard M. Cooper, Chief Counsel, and Robert M. Spiller, Jr., Associate Chief Counsel for Enforcement, Food and Drug Administration, Rockville, Md., and Robert B. Nicholson and Susan J. Atkinson, Attys., Dept. of Justice, Washington, D. C., were on brief for appellees.

Before WRIGHT, Chief Judge, ROBB, Circuit Judge and CORCORAN *, Senior United States District Judge for the District of Columbia.

Opinion PER CURIAM

PER CURIAM:

In *Hess & Clark v. FDA*, 161 U.S. App. D.C. 395, 495 F.2d 975 (1974) and *Chemetron Corp. v. HEW*, 161 U.S.App.D.C. 415, 495 F.2d 995 (1974), we held that the Commissioner of the Food and Drug Administration could not withdraw the agency's New Animal Drug Approvals for the drug diethylstilbestrol (DES)[1] without holding an evidentiary hearing. The Agency has now held its hearing, and the Commissioner has again decided to ban DES as an animal drug. His decision is reported at 44 Fed. Reg. 54,851 (1979).

Rhone-Poulenc, Inc. and Vineland Laboratories, Inc. are manufacturers of DES. They have petitioned for review of the Commissioner's order pursuant to 21 U.S.C. § 360b(h) (1976). Because the Commissioner's decision is supported by substantial evidence and his refusal to issue an Environmental Impact Statement (EIS) was proper, we affirm.

## I.

A new animal drug may not be marketed until the Commissioner has granted the manufacturer's application for a New Animal Drug Approval. 21 U.S.C. § 360b(d)(1)

---

* Sitting by designation pursuant to 28 U.S.C. § 294(e).

1. DES is used as a growth promotant in cattle and sheep. It is given to the animals either orally by mixing it with their food, or as a subcataneous ear implant which dissolves over time. DES was also used as a growth promotant in poultry, but the FDA has withdrawn its approval of that use. *See Bell v. Goddard*, 366 F.2d 177, 183 (7th Cir. 1966).

(1976). The Commissioner may not approve any application until the manufacturer proves that the drug is safe. 21 U.S.C. § 360b(d)(1)(B) (1976). Even if the manufacturer sustains this burden, however, the Commissioner must withdraw his approval whenever he finds that "new evidence . . . evaluated together with the evidence available to the [Commissioner] when the application was approved, shows that such drug is not shown to be safe for use under the conditions of use upon the basis of which the application was approved . . . ." 21 U.S.C. § 360b(e)(1)(B) (1976). This section, referred to by the parties as the "safety clause", was one of two independent grounds relied upon by the Commissioner to withdraw his approval of DES.[2]

In the *Hess & Clark* case we held that the "new evidence" requirement of the safety clause "plainly places on the FDA an initial burden to adduce the 'new evidence' and what that evidence 'shows'. Only when the FDA has met this initial burden of coming forward with the new evidence is there a burden on the manufacturer to show that the drug is safe." 161 U.S.App.D.C. at 412, 495 F.2d at 992. We must therefore review the record in this case to determine whether the FDA has presented new evidence raising questions about the safety of DES that are sufficiently serious to require the manufacturers to demonstrate that DES is safe. If it has done so, we must then decide whether the manufacturers have met their burden of showing that the drug is safe.

### 1. The FDA's New Evidence.

 The FDA originally approved the use of DES in animals even though it was known to cause cancer in them. The agency believed that, properly administered, the drug would not remain in any edible por-

tions of the animals receiving it, thereby eliminating any risk to human consumers. When, however, more sophisticated tests for detecting the presence of DES in animal tissues were developed the agency concluded that its belief was erroneous and that small amounts of DES were present in various edible portions of DES-treated animals. The Commissioner contends that the results of these tests meet the "new evidence" standard of the statute.

The Commissioner mainly relied upon radiotracer experiments which revealed the presence of small amounts of DES in cattle. In these studies radioactive carbon atoms were substituted for some of the non-radioactive carbon atoms normally found in the DES molecule. If radioactivity above the normal "background" amount was detected in the tissues of the animals which had been fed this "tagged" DES, it would be an indication that the DES was present. Additional tests were performed to confirm this conclusion. *See generally* 44 Fed.Reg. at 54,862–65.

Petitioners allege that a number of shortcomings in these experiments should prevent the Commissioner from relying upon them. The Commissioner considered each of these objections, however, and concluded that they were groundless. His conclusions are supported by the opinions of reputable scientists. *See, e. g.,* 44 Fed.Reg. at 54,863, col. 1 & 3 (testimony of Dr. Williams that radioactivity found in the animals by one study was attributable to DES); *id.* at 54,-862–63 (Dr. Aschbacher's studies found DES in the animals); *id.* at 54,864 (Dr. Williams found that radioactivity was not due to "pseudo-DES"); *id.* at 54,870–71 (testimony of Williams and Weisinger that DES conjugates, which may be present in the animals rather than free DES, are like-

---

2. The Commissioner also acted under 21 U.S.C. § 360b(d)(1)(H) (1976), the so-called "Delaney clause". This section prohibits approval of drugs which have been shown to cause cancer in animals unless "no residue of such drug will be found (by methods of examination prescribed or approved by the [Commissioner] by regulations . . .), in any edible portions of such animals after slaughter . . . ." The Commissioner has revoked his approval of the mouse uterine/paper chromatography method as the means of detecting DES under the Delaney clause but has not approved any method to replace it. He argues that the Delaney clause requires him to ban DES in the absence of any approved method of detection. Petitioners respond that the Commissioner must affirmatively find that some approved method has detected DES in the animals before he can rely upon the Delaney clause to ban the drug. In view of our resolution of the safety clause issue, we need not decide this question.

ly to break down into free DES in the human body). Petitioners argue strongly that other expert witnesses drew different conclusions from these data. Our task is not to resolve these scientific disputes, however. The expert opinions cited by the Commissioner constitute substantial evidence in the record supporting his finding that small amounts of DES (or DES conjugates likely to become DES when digested by human beings) are present in the animals.[3] Our inquiry on this issue is therefore at an end. *See* 21 U.S.C. § 355(h) (1976).[4]

### 2. *The Safety of the Detected Residues.*

■ The Commissioner did more than merely find that small residues of DES are present in the edible portions of the animals receiving it. He also reviewed the testimony and the scientific literature in an attempt to discover a "no-effect level" for DES, i. e., a dosage level at which DES would not cause cancer or other harmful effects in human beings. He concluded that no such level has been demonstrated and that DES is therefore "not shown to be safe" since there is no proof that small amounts of it are not harmful. 44 Fed.Reg. at 54,873–81.

By proceeding in this manner the Commissioner has met his "initial burden of coming forward with some evidence of the relationship between the residue and safety

...." *Hess & Clark, supra* at 413, 495 F.2d at 993. He is relying not only on the fact that larger amounts of DES are harmful, but upon studies which conclude that it is impossible to determine a safe level of DES in human beings. This evidence is sufficient to shift the burden of showing the safety of DES to the manufacturers. *Id.*

■ Petitioners responded to this burden by attempting to show that DES is similar to estrogens which occur naturally in the human body and that the small amounts of DES found by the Commissioner in the edible portions of the animals are insignificant when compared to the total amount of these naturally occurring estrogens. The Commissioner considered this argument but found that the manufacturers had not sustained their burden of proving that DES is similar to natural estrogens. This conclusion is supported by substantial evidence, *see* 44 Fed.Reg. at 54,871–73, and we will not disturb it.

Petitioner Vineland Laboratories also contends that the FDA should be bound by its previous determination that 2 parts per billion (ppb) is a safe level of DES in human beings.[5] Because the radiotracer studies reveal the presence of DES at levels smaller than 2 ppb, Vineland argues that the Commissioner must come forward with new evidence that proves that such dosages are unsafe. We note however that the evidence that DES is associated with cancer in

3. Most of the radiotracer experiments studied cattle. The Commissioner discussed only one study of orally administered DES in sheep. *See* 44 Fed.Reg. at 54,864. This study found no radioactivity in any edible portions of the animals, although some was detected in the adrenal glands of some of the sheep. The Commissioner assumed that the relatively high limits of detection of this particular test made it impossible to detect amounts as small as those detected in the cattle. He concluded that the presence of radioactivity in the adrenal glands of sheep and the similarity between the digestive processes of sheep and cattle made it likely that small amounts of DES were also present in the edible portions of sheep. For the same reasons, he also concluded that small amounts of DES would remain in sheep which had received it through implants, although no studies of DES implants in sheep had been performed. *Id.*

Petitioners argue that this court should not allow the Commissioner to rely upon extrapola-

tions from the studies of cattle. They contend that he should be required to produce studies which actually show DES to be present in sheep. We find the Commissioner's explanation satisfactory, however, in view of his expertise in dealing with animal drugs. We note that petitioners have not challenged in any way the accuracy of his conclusion that sheep are similar to cattle in all relevant respects.

4. Because we find that the radiotracer studies constitute substantial evidence supporting the Commissioner's finding that DES residues are present in the animals, we will not address petitioners' attacks upon his other source of evidence for this conclusion—the Department of Agriculture's Monitoring Program, discussed at 44 Fed.Reg. 54,865–67.

5. *See* 44 Fed.Reg. at 54,861: "2 ppb ... was once thought to be the safe dose for DES".

human beings first came to light in 1971, after the 2 ppb standard was established. (Testimony of Dr. Raucher, J.A. at 89) This new evidence justified the Commissioner's decision to reevaluate the 2 ppb standard. Although there is no evidence that dosages of 2 ppb or less actually cause cancer or other harmful effects, the Commissioner was properly concerned about the effects of long-term exposures to small amounts of the drug. (Raucher testimony, J.A. at 90–93) He acted correctly by requiring the manufacturers to show that the newly detected residues were below a demonstrable no-effect level. The manufacturers' failure to provide such evidence means that the drug has not been shown to be safe.

### 3. Benefits-Burdens Analysis.

Although the Commissioner found that DES leaves residues that cannot be determined to be safe in the edible portions of animals receiving it, this did not end his inquiry. In *Hess & Clark v. FDA* we held that

> [T]he typical issue for the FDA is not the absolute safety of a drug. Most drugs are unsafe in some degree. Rather, the issue for the FDA is whether to allow sale of the drug, usually under specific restrictions. Resolution of this issue inevitably means calculating whether the benefits which the drug produces outweigh the costs of its restricted use.

161 U.S.App.D.C. at 413–14, 495 F.2d at 993–94. (Footnotes omitted)

In his decision the Commissioner characterized this language as dictum and expressed the opinion that the statute does not allow him to consider the overall benefits of an animal drug. 44 Fed.Reg. at 54,881–83. He did evaluate the benefits of DES, however, and found that the manufacturers had not proved that these benefits outweigh the risks associated with DES.

The Commissioner's arguments regarding the propriety of risk-benefit analysis are repeated in the agency's brief. We decline the invitation to overrule our prior holding, however. The language quoted above was not dictum. Rather it expressly set forth one of the issues to be considered at the hearing. Whatever the merits of the Commissioner's arguments on this point may be, we are bound by the holding of the *Hess & Clark* court until we are instructed otherwise by the Supreme Court or an *en banc* decision of this court.

■ We find no reason to overturn the Commissioner's evaluation of the risks and benefits of DES, however. He discussed the shortcomings in the evidence presented by the manufacturers on this point in great detail. *See* 44 Fed.Reg. at 54,886–92. It would serve little purpose to repeat that discussion here, for we agree with the Commissioner that the manufacturers failed to come forward with sufficient evidence upon which any conclusions about the health benefits or the overall economic benefits of DES could be based. We therefore affirm his finding that the benefits of DES have not been shown to outweigh the risks associated with its continued use as an animal drug.

The Commissioner has satisfied his burden of coming forward with new evidence concerning the safety of DES. His conclusion that the drug is "not shown to be safe" is supported by substantial evidence. We therefore hold that he acted properly under 21 U.S.C. § 360b(e)(1)(B) (1976) in banning DES.

### II.

■ Petitioners have also argued that the FDA was required to prepare an EIS before DES was banned. The Commissioner concluded, however, that banning DES would not "significantly affect the quality of the human environment" and that the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332(C) (1976), therefore did not require him to issue an EIS. 44 Fed.Reg. at 54,894.

In reaching this decision the Commissioner relied upon a detailed "Environmental Impact Analysis Report" prepared by the agency's staff. (J.A. at 94–113) This report states that continued use of DES would provide some environmental benefits, namely, a decrease in animal wastes and a reduced need for food to be grown for the

animals. It notes that other growth promotants are available to replace DES, however, and concludes that their use will mitigate any environmental harm caused by the unavailability of DES.

We have stated that "[w]hen the agency determines that [an EIS] is unnecessary, it must give a statement of its reasons, and where the agency's statement of explanation is sufficient, the NEPA criteria are satisfied." *Asphalt Roofing Mfrs. Ass'n v. ICC*, 186 U.S.App.D.C. 1, 12, 567 F.2d 994, 1005 (1977). In this case the Commissioner's explanation was a reasonable one, and petitioners have pointed to no evidence that would contradict it. We therefore uphold the Commissioner's failure to issue an EIS before withdrawing the New Animal Drug Approvals for DES.

### CONCLUSION

For the above reasons the Commissioner's order withdrawing the FDA's approval of DES as an animal drug is

*Affirmed.*